Kirkpatrick v. Post.

---

ANDREW KIRKPATRICK, receiver &c.,

v.

HENRY A. V. POST et al.

53   591
53   641
53   591
e64   600
53   591
69L  372
53   591
66   152

1. Under the Chancery act (*Rev. p. 106 § 18,* amended *P. L. of 1893 p. 199*), the power of the court to order publication against non-residents extends to any bill filed and cannot be construed to be limited to bill filed to enforce demands upon which the court has jurisdiction to make final decree if the non-resident does not appear.   *Mutual Life Insurance Co.* v. *Pinner, 16 Stew. Eq. 52,* followed as overruling *Hoyt* v. *Thorn, 3 Halst. Ch 9.*

2. An order of publication under the statute against a non-resident, upon bill filed to enforce a personal demand, in which the non-resident defendants are charged as jointly and severally liable with resident defendants, is not unconstitutional under the fourteenth amendment of the United States constitution, and the decision in *Pennoyer* v. *Neff, 95 U. S 714,* as taking property without due process of law.

Kirkpatrick *v.* Post.

On bill &c. On motion to set aside order of publication against Henry A. V. Post and George Blake, absent defendants, as illegally and improvidently entered.

*Mr. Richard V. Lindabury,* for the motion.

*Mr. James E. Howell, contra.*

EMERY, V. C.

The bill in this case is filed by the receiver of an insolvent corporation, against seven of the directors of the corporation, to establish, by decree of this court, their joint and several liability, under section 7 of the Corporation act, for the making and payment of dividends out of the capital of the company, and not from its surplus or net profits, and for an account of the assets and liabilities of the company, as far as necessary to determine whether these payments of dividends were so made. By the terms of this section, the directors under whose administration such payment of dividends from surplus or net profits or division of the capital among the stockholders shall happen, are liable jointly and severally to the corporation, and to the creditors thereof, in case of its dissolution or insolvency, to the full amount of the dividend made or capital stock divided. *Rev. p. 178 § 7.* By the bill, process of subpœna is prayed against seven of the directors as defendants, including George Blake and Henry A. V. Post. Subpœna against all of the defendants was issued, four of them were served by the sheriff of Essex, and three—George Blake, Henry A. V. Post and Caleb B. Knevals— were returned as non-residents, the affidavit of non-residence showing that Blake resided in North Carolina and Post and Knevals in New York. On this affidavit, an order of publication was made on March 23d, 1895, against the three non-residents,

"that the said absent defendants do appear, plead, demur or answer to the complainant's bill on or before the twenty-fourth day of May next, or that, in default thereof, such decree be made against them as the chancellor shall think equitable and just;"

and it was further directed that notice of the order as pre-
scribed by law and the rules be within ten days served person-
ally on the absent defendants or be published or mailed to them
as directed in the order.

The defendant George Blake, on May 22d, 1895, two days
before the expiration of the time fixed for his appearance by the
order, and too near to that date to permit of giving the five days'
notice of motion to discharge the order, required by rule 141,
filed a petition setting out the filing of the bill and its general
object, his residence in North Carolina, and that he had not been
served with a subpœna to answer in the cause, but that in lieu
thereof, the above order of publication had been made, of which
he had received notice by mail. The petition prayed leave to
enter a special appearance in the suit for the sole purpose of ap-
plying to set aside the order of publication, that the order might
be set aside as illegally and improvidently entered, and that all
further proceedings in the action against him be stayed until the
determination of the matter of his application. On filing the
petition, an order was made directing (1) that he have leave to
enter a special appearance for the purpose of applying to set
aside the order of publication; (2) that the complainant show
cause why the order should not be set aside as illegally and im-
providently entered; and (3) that all further proceedings in said
action against him be stayed until the determination. A similar
petition was filed and similar order made, on the same day and
under the same circumstances, as to the defendant Post, and on
May 22d, 1895, special appearances were entered on behalf of
Post and Blake, for the sole purpose of applying to set aside the
order of publication made against them respectively as absent
defendants.

The receiver has filed an answer to the petition of Blake, set-
ting out, in addition to the facts stated in the bill, that Blake
filed with the complainant as receiver, his claim as a creditor of
the company in the insolvency proceedings; that he still is a
shareholder and director of the company, and is possessed of a
large amount of real and personal property in this state, and
claiming, that in becoming a shareholder and director of the cor-

38

poration, and filing his claim as creditor, he has submitted himself to the jurisdiction of this court for the purpose of all decrees made in the original suit in insolvency, or suits ancillary thereto, brought by the receiver for the purpose of winding up its affairs. Substantially similar allegations and claims are made in an answer by the receiver to the petition of the defendant Post, his claim against the corporation being, however, one which he holds as assignee of a creditor who has proved.

On the petition and answers, the counsel for petitioners move to set aside the orders—*first*, because they are not authorized by the law of the state. This claim is based on the contention that the statutes of the state cannot be construed to authorize orders of publication in suits where the bill is founded on a purely personal demand, upon which the court has no jurisdiction to make a decree in the suit, unless the defendant is served within the jurisdiction or voluntarily appears; *second*, because the fourteenth amendment to the federal constitution provides that no state shall deprive any person of property without due process of law, and the order violates this provision of the federal constitution as construed by the United States supreme court, and is, therefore, illegal. This assertion of an alleged right under the federal constitution was not made in the petition or on the record, but is raised at the hearing.

The motion to set aside the order of publication must be denied upon the following grounds:

*First.* The order for publication was issued under the express authority of the statute (*Rev. p. 106 ¶ 18*) amended March 10th, 1893. *P. L. of 1893 ch. 114 p. 199 § 1.*

This statute, so far as relates to the character of the suit in which publication might be made against an absent defendant, was the same as the Chancery act of February 29th, 1820 (*Rev. p. 702 ¶ 2*), and confers the power " in case of a bill filed against any defendant or defendants " &c., without any limitation as to the character of the bill. This was an enlargement of the power conferred by the original Chancery act of 1799 (*Pat. L. p. 430 ¶ 16*); which extended only to cases where

"any person shall file a bill against a defendant or defendants residing within the state in which it shall be proper or necessary to join other defendant or defendants residing out of this state, whether in the United States or any other country " &c.

The present bill, it will be perceived, comes within the scope of the act of 1799. For the receiver was entitled, under the seventh section, to insist upon a joint liability of the directors implicated, and for this purpose a joinder of all such directors in the bill was proper. The joinder of non-resident debtors charged to be jointly liable with the resident directors, and the exhaustion of all the statutory power of bringing the non-residents into court by service or publication, is, I think, necessary as the foundation of any decree for joint liability against the resident directors, even if no final decree can be made against the non-residents under the decree *pro confesso* expressly authorized by the statute. In *Madox* v. *Jackson, 3 Atk. 406,* Lord Hardwicke says: "The general rule of the court is, where a debt is joint and several, the plaintiff must bring each of the debtors before the court, because they are entitled to the assistance of each other for taking the account." *1 Dan. Ch. Pr. (3d Am. ed.) 264; Gifford* v. *Thorn, 3 Halst. Ch. 90, 94 (Chancellor Halsted, 1848).*

That the terms of the present statute extend to cases where the bill prays a decree *in personam* against a non-resident on a personal demand, as to which a court of equity has power to adjudicate against a resident, is settled in this court by the decision of Vice-Chancellor Van Fleet in *Mutual Life Insurance Co.* v. *Pinner, 16 Stew. Eq. 52 (1887).* In this case a non-resident defendant applied to set aside a decree for deficiency which had been rendered against him in a foreclosure suit on notice given to him under this statute. The vice-chancellor denied this upon the ground (at *pp. 57, 58*) that every independent government had the right to declare by what means parties to suits should be brought before its tribunals, that the method of notice to resident or non-resident was a "subject over which the law-making power of each government had supreme control," and therefore a decree against a non-resident, pronounced under the notice pre-

scribed by statute, was in all respects as valid and effectual for all
local purposes as a decree made against a defendant brought into
court by personal service of process.   Chancellor Halsted, in
*Hoyt* v. *Thorn, 3 Halst. Ch. 9, 15*, said that the statute of 1820
could only apply to " cases in which the court has jurisdiction
of the subject-matter of the suit," and set aside an order of pub-
lication against a sole defendant living in New York.   This was
a bill filed to set aside an assignment of an interest in a decedent's
estate, made in this state, and to recover the money received by
defendant under the assignment.   This case appears to have been
argued as if on application to proceed to decree in the cause (see
argument of counsel, at *p. 13*, and opinion, at *p. 14*) and thus to
get in advance the opinion of the court as to what it had the
right to decree, if the defendant did not appear.   But, if treated
as a construction of the statute, adding by construction words
limiting the express terms of the act, it must yield to the later
decision of Vice-Chancellor Van Fleet and the cases cited by
him on which he relied. ·

If the question of construction were *res nova* and the present
bill were filed against non-residents alone, my own view would
coincide with that of the late vice-chancellor.   The rule limiting
by construction the words of a statute sometimes applies in cases
where the construction of the statute is not clear, and where the
statute, as enacted, is within the authority of the legislature.
That the clear language of the act should be followed was the
rule of construction applied in the court of appeals in chancery
on a similar question in *Drummond* v. *Drummond, L. R. 2 Ch.
App. 32. (1866)*.   The court of appeal here held that the rule of
court authorizing the court to order service out of the jurisdic-.
tion of a copy of a bill on a defendant " in any suit," and which
rule had, by statute, the effect of an act of parliament, could not
be restricted to suits relating to land, stock or shares in England,
as provided by previous acts of parliament.   Lord Westbury's
decision in *Cookney* v. *Anderson, 1 De G., J. & S. 365*, limiting
the operation of the rule of court to the cases mentioned in the
previous statutes, was overruled.   Mr. Justice Lindley says, *In
re Anglo-African Steamship Co., 32 Ch. Div. 348, 351*, that the

Kirkpatrick v. Post.

question of service out of the jurisdiction depends on the statutes or rules having the force of a statute.

It is to be noted also that since the decision of Chancellor Halsted the legislature has, by several acts, expressed its intention and policy of making non-residents and foreign corporations parties by publication to suits founded on personal demands, recoverable in common-law courts.

Act of March 3d, 1853 (*Rev. p. 477* ¶ *5*), allows publication against non-resident heirs and devisees of a testator or intestate in a suit by a creditor on contract, and on default of appearance, the entry of a judgment for the debt and damages, without proof of lands descended. *Rev. p. 193* § *88* ¶¶ *3, 6 &c.*, provides for publication against foreign corporations not served with summons.

Act of 1878 (*P. L. of 1878 p. 141; Rev. Sup. p. 813* ¶ *30*) provides for publication against non-resident defendants where the cause of action arose in this state, and is one denominated local. This would reach to all local actions founded on a personal demand or cause of action.

Act of March 20th, 1895, *ch. 201,* provides for publication against non-residents or foreign corporations &c., who own or control property in this state, where the cause of action arose in this state and the plaintiff resides in this state.

The legislative intention, evidenced by these later acts, negatives the idea that in any of the acts upon this subject it was intended to leave to the courts the power to limit their express language by constructive additions, confining their operation to the cases where the court might make final decree or judgment. It was not intended, I think, that the question of the power to enter the ultimate decree or judgment should enter into the question of the right to give notice of the suit to a non-resident, or that this question of jurisdiction should be settled on a motion to discharge the order of publication. The complainant is entitled to have the question of jurisdiction settled by a final decree.

*Second.* Neither the statute nor the order of publication is invalid by reason of the fourteenth amendment of the constitu-

tion of the United States, providing that "no state shall deprive any person of * * * property without due process of law."

This provision, by its language, reaches only to the protection of property, and can be properly invoked only where the record shows that the taking of property is a direct issue on the record. Such taking was directly involved in *Pennoyer* v. *Neff, 95 U. S. 714 (1877)*, the leading case upon the application of the amendment to judicial proceedings in the state courts. Here a judgment was obtained in Oregon upon a personal money demand against a non-resident, and the judgment was rendered upon publication of notice to the non-resident pursuant to the Oregon statutes. The defendant in the action did not appear, judgment by default was entered and an execution issued thereon, and the purchaser at the sheriff's sale under the execution entered into possession of the lands sold. The defendant in the Oregon suit brought ejectment for the lands, in the circuit court of the United States, against the purchaser, who set up the title under the Oregon judgment and execution. The supreme court (Field, J., at *p. 733*) held that the property was taken without due process of law upon the ground that in a suit involving merely a determination of personal liability, the defendant must be brought within the jurisdiction of the court by service of process within the state, or by his voluntary appearance. The judgment here was attacked as being rendered without due process of law, and so in all the other cases in the supreme court following this case, and relied on by counsel, final judgments had been rendered, and either by force of the judgment itself or of the proceedings under it, *property had been taken* and the question whether it was taken without due process of law was directly involved in the right set up either by the plaintiff or defendant.

The courts of the state cannot, in the absence of an authoritative decision of the supreme court of the United States, construe this provision of the fourteenth amendment as bringing within its scope the forms of procedure in state courts prior to the rendition of judgment, and which are adopted by the state for the purpose of acquiring, or attempting to acquire, jurisdiction over non-residents. To construe it to apply to these forms of procedure

which may or may not result in a final judgment against a non-resident, and the taking of his property, would, it seems to me, be an unwarranted extension of its provisions. The supreme court itself has, by its own decisions in *York* v. *Texas, 137 U. S. 15 (1890)*, and *Kauffman* v. *Wootters, 138 U. S. 285 (1891)*, declared the operation of the amendment to be confined to cases where property is taken, or attempted to be taken, by process issued under judgment, and that the benefit of its protection cannot be claimed against statutes of a state which merely regulate procedure in cases prior to the final judgment. In the first case service in a suit brought in a Texas district court was made in St. Louis on a non-resident defendant. This defendant so served filed a special plea to the jurisdiction. Texas statutes provided that on such limited appearance, if the judgment was against the defendant, the appearance should be considered voluntary for all purposes. The district court of the state decided against the defendant on the plea to the jurisdiction, and the defendant relying solely on this plea, the district court gave final judgment against defendant. On appeal to the supreme court of the state this judgment was affirmed, and on writ of error from the United States supreme court to the state supreme court the judgment was also affirmed, the United States supreme court holding that the entry of this judgment did not deprive the defendant of property, in the absence of proof that the statutes or decisions of the Texas courts would prevent his attacking the validity of this judgment for want of jurisdiction. Mr. Justice Brewer, delivering the opinion of the court, says on the point now in question (at *p. 20*): " But the mere entry of a judgment for money which is void for want of proper service, touches neither person nor property. It is only when process is issued thereon, or the judgment is sought to be enforced, that liberty or property is in present danger. If, at that time of immediate attack, protection is afforded, the substantial guarantee of the amendment is preserved, and there is no just cause of complaint. The state has full power over remedies and procedure in its own courts, and can make any order it pleases in respect thereto, provided that substance of right is secured without unreasonable burden to parties and litigants."

If the non-resident defendant in the present case should fail to appear, and final decree should be eventually entered against him, then, or perhaps not until the attempt to enforce the decree by process against his property, the question of his right to protection under the fourteenth amendment may properly arise, but I cannot hold that it has arisen by virtue of making the order of publication for the purpose of acquiring jurisdiction of the non-resident defendant and allowing him to come in to defend if he wishes. *Eliot* v. *McCormick, 144 Mass. 10,* and *Needham* v. *Thayer, 147 Mass. 536,* hold that judgments which are invalid, within the rule laid down by the United States supreme court in *Pennoyer* v. *Neff,* can no longer be held valid in the state courts since the fourteenth amendment. The question of the application of the amendment and of the decision in *Pennoyer* v. *Neff,* was not raised or considered by Vice-Chancellor Van Fleet in *Mutual Insurance Co.* v. *Pinner, supra,* nor have I been referred to any decision in this state which rules upon the question. But the general rule, that a judgment or decree, void for want of jurisdiction appearing on the record, may be set aside on direct application or ignored in collateral proceedings, is recognized.in this state, both at law and in equity. *Munday* v. *Vail, 5 Vr. 218; Consolidated Electric Storage Co.* v. *Atlantic Trust Co., 5 Dick. Ch. Rep. 93.*

In view of the character of the bill in this cause as filed against residents and non-residents claimed to be jointly and severally liable, and of the character of the decree which is prescribed by the statute to be entered when notice is given as directed by the order, it seems clear that the order cannot be held to deprive the non-residents of any property in violation of the fourteenth amendment.

Under the view I take of the case, it is not necessary to decide the question whether the non-resident defendant, by becoming a director in the New Jersey company, and thereby having become subject to the duties and liabilities of a director, expressly imposed on him by the act of incorporation of the company, has impliedly consented, so far as relates to the enforcement of these duties and obligations, to the provisions of the New Jersey laws authorizing

service on non-residents by publication. I therefore express no opinion on this point.

The application to set aside the order of publication must be denied, and the order to show cause discharged, with costs.